Good morning, please be seated. We're here for the embankment argument in Maldonado v. Holder, and Judge Gould is appearing by video from Seattle. Good morning, Judge Gould. Good morning, Chief Judge Finstein. How's the weather in beautiful Seattle this morning? Well, it's nice and rainy, and we love the silver skies here. I always love being in Seattle in the rain, but I see you're able to hear us, and we're able to see and hear you well. I can see all of you and hear you well. Counsel, it looks like you're ready. Thank you, Your Honor, I am. You may proceed. Thank you. It's a privilege to be here before you today. With me is Ms. Mary Donahan, an attorney at law. I may begin, if I may, cut it, be very short on the jurisdictional issue, because these issues have been raised many times, and this Court has accepted jurisdiction. Well, but we're in bank now, so you better talk. Okay. We can overrule all those cases, and why shouldn't we? Fair enough. The government argues on this 11th hour that this Court lacks jurisdiction. It's better than the 12th hour. This Court lacks jurisdiction based on 8 U.S.C. 1252, and this Court has always held, because the deferral of removal under CAT is always on the merits. For that reason, this Court is not deciding whether... That's not what the statute says. Tell us why it doesn't fit within the statute, the way the government argues. The statute says this Court has no jurisdiction to decide a case when the Court has ordered the removal of a criminal alien. What does the statute actually say? Do you have the language in the statute? Yes, if I may. If I may. ...orders against criminal aliens, notwithstanding any other provision of law, including Section 2241, Title 28, and some other provisions, no Court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense. And how does that not fit your client? Your client is removable for having committed a criminal offense, so why doesn't that statute preclude us from taking up your argument? Because, Your Honor, when the immigration judge determined that Mr. Currencita is not eligible for deferral of removal under CAT, he did not come and say, you are a criminal alien, therefore I'm not going to grant you deferral of removal. But that's not what the statute says. The statute doesn't speak of the grounds for denying deferral of removal. The statute speaks explicitly in terms of who is removable, for what reason. And your client is unquestionably removable by reason of having committed a criminal offense. I recognize our prior cases of carbon exceptions. I don't see where that exception goes through the statute. Isn't there a statutory exception, though, that probably applies here? The statutory exception is that. Is D. No, D. There you go. Right? D. Just look at D. Doesn't D apply? I mean, the way the case is teed up, doesn't D provide this Court with jurisdiction to address the issues that are raised in the petition for review? It does, Judge Breyer. It says specifically the alien has exhausted all administrative remedies available to the alien as of right. So. No, no, no. That's not the one I'm talking about. Nothing in subparts B or C. C is the one you just read to us. Oh, sorry. The review of construction. Yes. Review and construction. No. Judicial review of certain legal claims. That subject's in D. And it says nothing in subparagraph B or C or in any other provision of this chapter which limits or eliminates judicial review shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review. The way I understand this is you're challenging the application of law in this case that required your client to have the burden of proof on relocation. That is definitely a legal question. Burden of proof is a legal question. Oh, yes, absolutely. That is a legal question. But I thought we were talking about the actual substantive determination, the actual finding. Yes. There's no doubt that that is a legal question we can review. I hesitate to provide the other admission. There are many that my colleagues have tried to prevent you from providing. But what about four? We don't even have to get to these. Page four. Notwithstanding any other provision, including a petition for review with an appropriate court as it relates to the United Nations Convention against Torture would come to this Court. So we don't even get to two. We've got four. That's where cap relief comes in. It has nothing to do with it. And that is precisely where we have jurisdiction in this Court. Well, explain to me how we have jurisdiction. That gives us jurisdiction to review factual findings. Sorry, Your Honor. I didn't hear you. Other than agreeing with Justice Smith, why don't you explain to me how this gives us jurisdiction to review factual findings. We can review the legal determination, but how does this speak to factual findings? Because the Convention against Torture No, no, talk to me in language. Which language are you relying on for? I'm relying on the exception that Okay. Give me a section. Give me a subsection. Notwithstanding any other provision of law I'm sorry. Where are you reading from? Four. That's section 1252 sub 4. A4. Okay. And what are you reading there? What does it say? Notwithstanding any other provision of law, statutory or non-statutory, including section 2241 of title 28 or any other habeas corpus provision, and so on, a petition for review filed with an appropriate court of appeals in a court of section shall be the sole and exclusive mean for judicial review of any cause or claim under the United Nations Convention against Torture. Okay. And what does cause or claim mean? Any cause or claim. Does that include factual questions? It does. It is my understanding and our position How does it help you? It just says this is the exclusive means. It doesn't say by what standard we review them. That's governed by the statute that says that if the alien is being removed for a particular criminal offense, we can't review facts. I mean, what is it in here that contradicts that? I can give you more. We have a deferral of removal here. We're not under removal. We're under a deferral of removal under cash. That's a totally different situation than an order of removal under 1252A2C, is it not? I have this. That's one reason. But the main reason that I, that petitioner submits is that the actual removal is not based on the criminal offense. That's exactly what the deferral of removal statute talks about. In fact, under the deferral of removal, Congress intended to review deferral of removal claims under cash, and they are exceptions to the criminal case law, are they not? They are, Your Honor. My understanding, though, is that these are legitimate concerns with respect to the Court's jurisdiction. But we only really get there, as Judge Kaczynski, as the Chief Judge has indicated, if we get to the merits, if we have to look at the facts. But as I understand what happened here, what you're asking is that we clarify the law, our circuit law, and the way in which we have interpreted the regs, the applicable regs here. And if we do that, shouldn't what we – shouldn't we just then remand the case back to the BIA so the BIA can apply our law to this particular case? Judge Paius, if this Court chooses to clarify the law and the burden of proof, the burden of persuasion, then a remand will be appropriate, because then you've given the BIA new instructions on what the standard is, and here it is. Go ahead and make a new decision based on that. Well, wouldn't we, as Judge Paius suggests, in these particular cases, given our precedent, wouldn't we have a duty to remand the BIA first to interpret their own regulation as to the burden of proof or burden of persuasion before we weigh in and try to tell them what it is? Isn't that the precedent, that we send it back first, but then weigh in, and then we go? And we either give Chevron their version of what they need to tell us, or we don't. I mean, after all, it's the regulation. Well, 08.17. Which was not followed by the BIA, Your Honor. Well, it wasn't followed because they had binding strike of precedent, which they were somewhat conflicting. But we could remove that precedent since we're sitting in bank. We could simply overrule those cases. And I think, if I understand Justice Smith's questions, if we do that, wouldn't the appropriate course be to send it back and have the BIA determine what the standard is in the first instance? And that was my intended answer to Judge Paius. Yes. If this Court removes Lemus, Galvin, or Hassan, and says, because that's what the BIA relied on. Or both. Or Perez-Ramirez? I don't want to remove it yet. Well, but I... Perez-Ramirez we obviously support. And we like. Because it stands for the proposition that... Wouldn't we have to do what Judge Smith has suggested, which is give the agency a chance to interpret the statute in the first instance? And then our job would be to determine whether its interpretation is reasonable. It would be hard to argue otherwise, Judge Kuczynski. I don't want to make it hard for you. Because the BIA relied on specific cases by this Court, and if this Court removes this standard and authority, then the BIA should look at it one more time. I want to stay on this track. But before we sort of lose the jurisdictional issue, I do want to stay on this track. I just want to make sure I understand. I thought there were collateral issues in this case that you were raising that did implicate the fact-finding process of the BIA. Is it your position that if we were to, let's say, rule our cases in remand for determination, all those things would wash out? We raised some other issues about credibility and finding of facts. But the crux of this matter, Your Honor, remains. Your position is that if we overrule as a legal matter our cases or remove our cases and remand to the BIA, all those other issues would wash out and we wouldn't have a reason to address the jurisdictional issues that Judge Clifton raised and I raised? In high likelihood that it would wash out, yes. We would brief it again. I want to follow up on this. Okay. We've gotten some advice from my able counsel to the effect that this is perhaps sentencing back to the BIA. But here we have a series of our cases that the BIA relied upon. They can't overrule our precedent. And we have Hassan. We have Singh. We've got Loomis, Allergan, Norton v. Gonzales that go one way and rely upon the regulation. We have Perry v. Marriott, which is an outlier, which applies the burden of proof of wrong regulation. Isn't the appropriate thing for us to do, at least from a jurisdictional perspective, we need to clarify our own law. Sure, we need to send it back to the BIA to apply, but they can't overrule what we're doing. No, we need to clarify our own law and determine whether whichever line of cases is correct. Absolutely. My understanding of my agreement to the remand is premised on the fact that this Court has to deal with those cases before it sends them back. You can't agree with both me, my question, and Judge Smith's because they go in opposite directions. If you agree with both of us, you've said nothing. I suggest it's quite the opposite. And, again, I do want you to answer Judge Smith's question fully, but the question I asked is, if we overrule or remove our cases, would we not be in a position where we have to say nothing about the standard, where we'd have to send it to the BIA, let the BIA articulate the standard, and then when it comes back, we determine whether that's consistent with the regulation. I think Judge Smith, Judge Mylon Smith, who's right in front of you, well, we have two Smiths. And, again, I'm not – you must understand we're just asking questions to clarify the issue. But I'm just – I was suggesting that Judge Smith's question pointed in another direction. So if you agree with both of us, you've really not clarified the issue. I see your point. You wanted to send it back and let the BIA clarify the standard. That was my suggestion. Again, don't take that as being necessarily my view. I'm – just like you shouldn't take that as being necessarily Judge Smith's view. But the thrust of my question, if you answered yes, is that we don't decide the standard. We send it back. The BIA decides. I think the thrust of Judge Smith's question was that we should clarify the standard and send it back. In that case, I agree with Justice Smith. And we should clarify – In this case, Judge Werdlop, then you still have – you have removed the authority from the BIA. So if you – you're saying we're not correct on both sides, the Perez-Ramirez or the Lemus-Galvan, especially what the BIA relied on, then you're removing    authority. Without that authority, BIA remand would have to – We have it within our province to say, well, we think both these lines of cases are wrong. We overrule all of them. This is the correct reading that we see. And then the BIA under Brand X could come back and say, no, we see it this other way, and then it would come back, and then we'd have to look at it deferentially or whatever. So your position is if you decide – I don't have a position. Again, you – Ask your questions. Okay. Exactly. The question – Exactly. I apologize for that. So the question is if you take away all these – you disagree with all these decisions, and I argue that you shouldn't disagree with those decisions, at least the Perez-Ramirez is the correct decision. And it is the correct decision because the standard of proof is not – was not created in FEMAIR. In the interim rules that created the CAT regulation, they specifically said we rely on – when it comes to relocation, when it comes to relocation, the interim says we cannot rely on the asylum line of regulation. And that's exactly what the interim rule says. Well, that's what Perez-Ramirez did, though. It applied to the asylum and removal of an INA as opposed to the CAT. Yes, because the CAT relocation issue stems from the asylum regulations. And that's what the Perez correctly pointed in the right direction, saying, look, if relocation – if we – if the interim rule said I'm going to borrow the relocation issue from the asylum, why not apply the asylum rule to it? I guess my question about that is this. I don't find anything in the regulation which would suggest that we have to go to regular withholding or asylum at all. What we have in 16C3 is we have to assess whether it's more likely, including but not limited to, four factors. It doesn't say anything about reasonableness. Reasonableness is all in withholding and removal. It doesn't say anything about reasonableness that has anything to do with asylum. Because reasonableness establishes a burden of proof and what burden ought to be. This is C3, which is connected with C2, which has its own burden of proof right there. Why do I got to go wandering off into asylum and withholding for cash? It's right there in the regulation. Why not let the BIA tell me why I have to wander rather than give them the prescriptive view that you would like or that the government would like? And the BIA clearly went wrong because they used that more likely and not standard to go through those four grounds. Well, frankly, the BIA did not use that standard, in my view. It adopted our standards in the cases that Judge Smith decided to use. And I think wrongly adopted them because we forced them to. So let's back off and let them think at 208-16B and C what ought to really be the standard and then see if we can apply Chevron efforts and not put a view in that you want or that the government wants. But, Judge Smith, you don't believe that we should have some direction to the board because the board now, as they took this case of relocation, they take this as a dispositive matter. It was never intended as a dispositive matter. Do you mean that relocation was like an element? Well, exactly. That's what the BIA took. But don't you believe that's what our case law made them do? And what I'm suggesting is that they look at the regulations. There's four factors that need to be considered. Among others. Among others. So, therefore, we forced them to do what they did. And all we need to do is say, okay, we back off. Give us a truce group on your regulations and we'll see if we can apply Chevron efforts and not take a view that we want or that the government wants. The BIA did rely on Liam S. Galvin. The BIA did say that Mr. Corsonita did not establish that relocation within Mexico was impossible. Should we give our reference to the brief the government has already submitted discussing these issues? Well, the government was not really far off on the impossibility. I think we both agree that impossibility is not the right standard. That's my understanding of their brief. That's my understanding of their brief as well. So they are offering a position here in their briefs, and people have been asking about Chevron efforts, but I'm wondering if we should give our reference to their brief already. Well, yeah. I mean, I hate to say their position because it's really both our positions that impossibility is not the standard. So if that's your reading of this, and that's certainly the correct reading. But they also, they don't agree with Perez Ramirez, so do we need to defer to that as well? I agree that they don't agree with Perez Ramirez. And I would like to see Perez Ramirez applied because the relocation issue came from the asylum. Thank you. As I said, we're talking about two entirely different things here. We're not in the impossibility issue to deal with deals with relocation within the country. So Perez Ramirez and the other cases we've talked about in the four factors, as Ed Schmitz referred to in the right place, it deals with the reality of everyone is the burden of proof. Let's not get those mixed up. I'd like to get your view of the problem. You've heard from a number of us on the issue of whether we should send this back to the BIK on the basis that the regulations state what the standard is, let them apply. Since then, we'll see if we can get them to defer. But if we were to do that, since we have at least five cases for which, say, one thing, another says something else, that control, would we not have to vacate all those cases first if we're going to send it back and ask them to give us a fresh one? I don't know. How else would the BIA then, if you don't vacate them all, they're going to pick one of them that still stands and say, this is a standard. Right, unless we vacate all those cases, if we follow the idea of sending this back. Assuming you don't like Perez Ramirez. I mean, you could vacate the other four. We could like any one of these cases. Some of these cases I like a lot. But I think the point is it's not for us to pick. The point is for us to clear the field for the agency to have first crack at it. And it's hard to come up with a rationale for you or for me or for any of us that says we'll clear off some cases, but we'll leave in place the ones we like. I mean, maybe you can come up with a rationale for it, but it's hard to make it. Well, if we look at, I mean, the rationale of Lemus Galvin and Hassan, Your Honor, really have no legal basis in relocation because they only talk about impossible. It's like a snowballing. Hassan said it's not possible. Lemus Galvin comes to say it's impossible to relocate. I mean, there is. And they quote, they refer back to the CFR. They refer back to the case of. Maybe when we overrule some of these cases we can say we overrule the excellent case of. And then other ones will say the not so good case of. It's also overruled and thereby give a hint. You think that would do the. I would. I would say that as to all opinions I have written are excellent opinions. I know you were. Can I ask you about a different jurisdictional issue? Please. Is your client currently in the United States? I was waiting for that question, Your Honor. Avoid the answer. Yes. I would love to avoid the answer, but let me tell you this. I don't know where my client is. I honestly do not know. Contacted the family. Haven't heard back. I just hope he's alive, honestly. I hope he's well. And I hope if we make some traction to a remand or maybe another stay that the government can bring him back. Well, okay. Hang on. But the last thing that you told our court, I think, was that he had been removed. Oh. Right. Sorry. As far as things stand. Well, at that one point. Yeah. After his removal. But as far as, in terms of what you can represent to the court, the last thing you did, he had been removed. Absolutely. Okay. So the only other question I have for you, then, is let's say that we went forward with this case and that your client actually were granted the furlough removal and he's still in Mexico. Would that entitle him to reenter the United States? There is a mechanism where once you win on the United Circuit, yes, the government would arrange for his transportation back. Okay. That's what we could. If all your client won was deferral of a foreclosure cap, he would be entitled to reenter the United States. That's my understanding. The government will actually, he could shed some more light on that. But my understanding is, yes, they will actually bring him back. If they can find him. That's right. If he's alive, frankly. Do we have a mootness issue here? We don't have a mootness because we're going to assume he's absent, not dead. We have cases. We have at least one presidential opinion that says if somebody has been removed, that's the end of it. There's no longer a deferral or removal issue to be adjudicated. The case is moot. There are a line of cases that says, at least with the BIA especially now, that if someone has been removed, you don't lose jurisdiction. The case moves on and then you continue to have jurisdiction over the case. We have another conflict in our case law that needs to be dealt with. So, Judge, so I understand you're saying if someone is, when do you, when is it moot in your opinion? If the petitioner has been removed and is no longer in the country, we have authority that says a claim for deferral or removal is moot. I'm not aware of that authority. That's the Cower case from 2009. I'm happy to brief that because I am not aware of that. Okay, you've got a little over two minutes left. Do you want to stay there for rebuttal? Yes, Your Honor, if I may. Okay, we'll hear from the government. Thank you. Thank you. Mr. McLaughlin? Good morning, Your Honor. May it please the Court, my name is Andrew McLaughlin. I represent the respondent, Attorney General Levin. Can I just get you to answer that last question? So is he right that if he were to be granted deferral and removal, he would be entitled to re-enter the country? He's of the peace of Mexico. No, Your Honor. Then why isn't he? Because that's the only thing I thought could possibly save him from the prosecution. The way this case developed and the speed with which it came to this Court, we were unable to determine whether or not he is, in fact, in the United States.  However, if he's not in the United States, the position of the government would be that the deferral of removal issue would be moot, and that's the only issue. How was he removed? What? Was he removed by the government, or did he voluntarily? He was removed by the government, Your Honor. He was an aggravated felon. And you're saying that if he somehow re-entered the country in any way and he happens to be in the United States, he would not be moot? That's the position of the Department of Homeland Security.  So how do we know? That's problematic, Your Honor. That's why I'm not arguing that issue. Assuming he's in the country, it's not moot, and assuming he isn't, it is. Or assuming, heaven forbid, he's dead at the hands of the Mexican police. Or otherwise. If he's dead, he's definitely moot. The government never raised mootness. No, Your Honor. We did not. Before the three judges, at the original briefing and whatnot. At the time of the original briefing, he had not been removed as felon. It doesn't matter, of course. Mootness is a jurisdictional issue. That's correct. We have to deal with it. Why isn't the correct analysis, the last known act and the last official act we have, is that he has been taken out of the jurisdiction of the United States? He's been removed. There's no evidence that he's come back in. Why isn't that the end of the case? Your Honor, that's reasonable. I understand the government doesn't want to press the point, but I'm now asking you because we have to determine our own jurisdiction. So you don't want to press it, I understand, for humanitarian or other reasons. I regard that as fact-based, and I don't have any facts. You don't have any facts. So the last fact we have is that he has been, and this is in the record, this is not just your say-so, that he, in fact, has been officially removed by the United States. That is correct, Your Honor. Taken across the border and deposited in a foreign country. That is correct, Your Honor. And do you have any reason to argue that this is not moot? No, Your Honor. Any facts or anything? All I know is that he was taken. I do know he was taken across the border into Mexico, and that's all I know. And that, again, was several years ago, and this particular individual has shown a propensity to reenter the United States. The position that the government has... And where in the record is that? That he reenters the United States? No, no, that he was taken, officially removed by the United States. It isn't in the record that was before the Board of Immigration Appeals. Is it in our record? It is in the pleadings filed by the Petitioner. Pleadings or briefs? I don't recall seeing... We don't have pleadings. We have briefs. There were other pleadings filed with the panel, as I recall. Is there an official document, something of which we can take official notice? I don't recall, Your Honor. I don't recall seeing that when it was before the three-judge panel. There's a footnote in his own brief that she says, right around 2010, that his client had been removed from Mexico. And there was a request for a stay, which was denied, and then there was representation to the three-judge panel, or not to the panel, but to the court back in 2010, that he had been removed. I'll take your word for that, Judge Watford. I know I've seen it. I'm just not sure where I saw it. I want to ask you a question, which someone orders on a jurisdictional issue to you. The government contended in the supplemental briefing that we don't have jurisdiction to review this case and say that our case law conflicts with the law of virtually every other circuit. And you cite ten out-of-circuit cases. When I look at the cases, and I look at them carefully, I don't see any of them that state that the appeal challenge, the murder proof, or the cat claims is a factual question over which we lack jurisdiction.  I don't know who prepared the supplemental brief, and I don't want to be unkind, but I've got to tell you, when I read stuff like that from the United States, it completely undermines my confidence in what you're telling me. So at least for my part, would you just take it back? Don't do this. Your Honor, I prepared the supplemental brief. If you cite a case, it better mean what you say it says. And every single one of those cases stands for the principle that every other court has refused to accept jurisdiction over factual matters. A separate issue is whether the question of the likelihood of a future torture or other issues that have been raised at various times in this case are factual issues or are not factual issues. And we address that separately in the brief. That's not at all what we're talking about here. You've said we have no jurisdiction in this. In this case, you've said that the approach that we've taken is wrong and we have no jurisdiction. You cite a bunch of cases that deal with very different factual issues and very different legal issues. Nobody argued with the fact that it's a pure factual question. Untethered to CAD, that's what the statute said. But what I'm saying is you've made an all-face statement, said that every other jurisdiction disagrees with this, and you cite ten cases. And from my reading of them, not a single one backs up what you say, and a couple of them say, back me up. I'm simply saying, from my part, I'm only speaking for myself, I was really offended, I was really disappointed with the United States when they give us this kind of stuff. Tell us the truth, whatever it is. Don't tell us stuff that's not true. I'm sorry you feel that way, Your Honor. These cases stand for the proposition that the Court of Appeals has no jurisdiction to review matters of fact in CAD cases. That's what every single one of those cases stand for. Every one of those circuits has rejected jurisdiction in that context. Every one of them has dismissed the case as a result of a factual issue and a CAD claim. That's all I was trying to say in the brief at that point. The separate issue that this Court needs to deal with is its law dealing with what's a question of fact and what's a question of law. That's a different question, and we do drop a footnote about that, noting that the question that's actually been raised by petitioners in this case. You're claiming that Tran v. Gonzales, the Sixth Circuit case that says that, or Jean Pierre v. the U.S. Attorney General, the Eleventh Circuit case, which actually cites our cases approvingly, in every single one of those cases, the Court dismissed the petition for review which raised a factual issue associated with CAD. Every single one of them. That was the criteria that I used for selecting cases. And Jean Pierre, the Court said that whether a particular fact pattern amounts to torture required the Court to apply any legal definition instead of undue or undutated historical facts and is therefore a legal question, then the Court had jurisdiction to review it. Whether something amounts to torture was the question in that case. This question here is whether or not torture is more likely than not. Totally different issue, and this Court has held that it's a matter of law. Do you dispute that at the first level, the first level of inquiry here regarding the law, we have jurisdiction over that, correct? This Court has jurisdiction to review legal issues. Questions of law and questions of constitutionality. That is correct. And to answer the question that you asked earlier, if this Court answers only the questions, the issues that were framed by a petitioner in Petitioner's opening brief to this Court, this Court could answer all of those questions on a legal basis, and there would be no factual issues in play. However, if this Court gets to the factual issues that are underlying Petitioner's arguments or gets on to the legal issues, the factual issues that is argued in Petitioner's reply brief in response to our supplemental merits brief. Well, my initial question presumes that we answer those questions, we deal with the legal issues, and then we would remand. And Judge Kaczynski and Judge Smith have taken it to a – that issue to a different level. It obviously depends on how you deal with those legal issues. If you agree with the government that the resolution of those legal issues is the same as what the immigration judge and the board did in this case, then there's no reason to remand. I guess I worry – I mean, this might be an ideal approach. But when I look at this, the order of removal is not even being appealed. No place in this record does it say the order of removal is being – the order of removal is there. It's there. It's there. We're only talking about whether it's deferred or not. Yes, Your Honor. And so I'm in still a tough time how we can apply 1252 AC – A2C to this. I don't see how it counts. If we go to 4 and we're just talking about whether we're going to defer or not, I'm wondering how your cases that have anything to do with fact or law apply. Let's walk through 242 – 242 as you attempted to do with Mr. Ballewt earlier. 242 – 242 A2, we'll talk about questions of law or questions of fact. Your Honor, your interpretation of that provision is not quite right. And let me help you. Let me help you get there. Your jurisdiction – Absolutely. Your sole source of jurisdiction, the only provision of 242 that gives you jurisdiction is 242 A1. That's the sole source of jurisdiction. Everything else modifies or refers back to 242 A1. Therefore, when 242 A2C says no – the court doesn't have jurisdiction to review final orders of removal under A1, which is exactly the same term used in A1, the court is saying in the circumstance of a criminal alien who's removable on this basis, no jurisdiction. Why is A1 not at all applicable to A4? Read A4 closely. When you say A1 is applicable to A4, it says in A4, notwithstanding any other provision, that's A1. Your Honor, A4 and A5 were both added by the Real ID Act in 2005 to try to channel what had gone astray back into A1, and that's what A4 specifically says. Where in A4 does it say that? A petition for review filed with the appropriate court of appeals in accordance with this section, 242 A2 – Which is A4. No, this section – Nothing to do with 242. The section is 242. I understand. The subsection is A4. The section is 242. There is no authorization for a petition for review to be filed under 242 A4. And if you look at the – this is actually just an incorporation of Section 2242D of the Foreign Affairs Restructuring Act, the act that incorporated CAT into the U.S. law that says the only review of a claim under CAT shall be as part of a petition for review under Section 242. All that's telling you is everything gets channeled to the court of appeals under 242 and subject to the other limitations in 242. So the limitation on jurisdictional – on discretionary claims in 242 A2B, there's a limitation on criminal aliens cases in 242 C, limitation on exhaustion in 242 D1. All of those apply to everything within 242. And all these provisions are trying to do is get everything back in front of you as part of the review of a final order. That's all it's trying to do. Final order of removal is the key term. Final order of removal is the term that appears in your jurisdictional grant in A1. Final order of removal is the thing you're barred from reviewing in 242 A2C. By the plain language of that statute, by what Congress did in trying to incorporate those things back, some of them got astray. So how does this apply to deferrals? The strange thing is that is Judge Smith's question suggested that deferral was somehow something different than removal. Well, then that order of removal. The key thing here is that we have a denial of deferral, and what you are reviewing is the order of removal incorporating the denial of deferral. Well, we're reviewing the CAC claim. No, Your Honor. You're reviewing the denial of a CAC claim. We're not reviewing the denial. We're reviewing the deferral. The denial is in place. Nobody appealed it. Nobody fought about it. If I go through the transcript, nobody said anything about it. All we're suggesting is was it deferred or not. No, the denial of the deferral removal is the only issue before this Court. If the agency had granted deferral of removal, would there have been an order of removal issued? Your Honor, yes. There would have been an order of removal. The alien would not have been removed, at least not to Mexico. It's a form of relief, but it's unlike asylum or holding because it stems from the connection against torture from a tree. We actually refer to it as protection from removal as opposed to relief from removal to distinguish it from asylum, at least. Does that make it different than the forms of relief, which perhaps you could say under the statute there's a final order of removal, this is just relief from removal? The CAC claim seems a little different. Why is it the same? The reason it's the same is Congress channeled everything into the review of a final order of removal. FARA specifically said review of a denial of this claim and any claim associated with CAC has to be reviewed as part of the review of a final order of removal. And then when they put it into 242A-4, they specifically said the only review that's available is in the Court of Appeals and is part of a review of a final order of removal under this section. What statute do I go to to find your first part of the argument? Because if I look at 1252A, I have one, two, three, four, five different provisions I can go to. I don't see why one has anything to do with four. It doesn't suggest it does. The statutory review wouldn't suggest it does. I can go directly to four. I don't have to go to one. No, Your Honor. That's just simply not true. There is no jurisdictional grant anywhere else in the statute. Everything refers back to section A-1. Hey, counsel, you can understand why we're struggling with this. I mean, you're not citing to us a case. You're not citing to us congressional intent. You're not citing to us a statute. You're just telling us to equate to a form of relief with a deferral pursuant to a treaty because they happen to appear within the same statute. Well, you have to give us some authority that says that's the way you do it. Or maybe you're telling us that, you know, that's what Congress was trying to do, but maybe it didn't actually do it literally. Your Honor, the reason I'm a little flustered is I see the words under this section in A-4. It's there. It refers back to the whole of 242. The review of a cat claim is part of the review of a petition for relief. That's the confusion I have, at least, is that the order removal is there. The order removal apparently has even been acted upon. There's no challenge to it. What we're talking about is, you know, perhaps the application of the wrong legal standard to a deferral of removal under a cat. Your Honor, there's a series of Supreme Court cases cited in our briefs, Stevich among them, that tells you that all claims associated with reopening or relief from removal are channeled into the review of a final order of removal. That's what it says. That's what those Supreme Court cases say. It's all part of the review of a final order of removal. That's it. And that's the sole jurisdiction you have. You don't have any from any other source. That's what those cases say. It would help me, and I don't want to cut off this question. If you gave us just a quick overview of where the government's overall position is, you don't think or you don't urge us to find the case moot on the fact that we're sort of understand that. So what do you think, just a quick overview so we understand where all these things fit, what should we do with this case, in your view, assuming it's not moot? And then I ---- Your Honor, it can be fairly simple at the top level. This Court raised two issues that the government doesn't believe even are present in the case because they weren't raised below and they weren't raised by the Petitioner in his opening brief to the Court. So our position is that those really aren't even matters in controversy by the Court, and there's no basis for which the Court can remand either as a matter of jurisdiction or to expect the Board to address something that wasn't raised by the Board. Suppose we disagree with you on exhaustion. Assume we disagree with you on exhaustion. Yes. Answer Chief Judge Kaczynski's question. Okay. So that was our first point. However, Perez-Ramirez is just plainly wrong. It's wrong in its face. It simply didn't consider the case. I wasn't really asking for an argument. I was really asking, when you get the opinion in this case, what would make you happy? I mean, what is the government's position we should do at this point? Not that we're going to make you happy, but I'm just wondering, what is it you want us to do? If the Court is going to address the two issues that the Court raised, the Court should overrule Perez-Ramirez, abrogate that portion of the decision, and if the Court feels it necessary, if it feels that the Lemus-Galvin word impossible somehow is a holding that's binding on the Court and is confusing matters, wipe out the word impossible. That's fine. That doesn't bother the government at all. Now, given that, you have to resolve. Exactly. The analysis of which is correct. You can look at the fact that the Board mentions Lemus-Galvin and uses the word impossible. You can look at that. If you look at the analysis that they applied and the fact that they were doing clear error review of the immigration judge's decision, which did not use the word impossible, and his analysis, in fact, showed that it was possible, as opposed to using any kind of negative burden of proof there. His analysis said, look, everything about what you told us on the stand says you were able to leave, you would not go back there, and if you did go back, you would be able to leave, and if you went other places, there's no demonstration that torture would be likely in those other places. It was all affirmative. That is, there is plenty of evidence that you would not be tortured in other places to demonstrate that you failed to meet your burden of proof to show that you could not relocate. I'd like to interrupt just a second. I hope you're at the end of your answer, because I find it tough to determine that the BIA relied on the IJ at all. In fact, the BIA says they agree with the IJ, but it doesn't say they do anything with the IJ's stuff and start citing their own stuff. And as a part of their stuff, they go right to the decisions about possibility and impossibility. So it seems to me to be a very tough sell for me to say, I can immediately suggest the BIA did the right thing. They applied the wrong standard of review. They implied impossibility, which you agree with. So the least I can do, it seems to me, if I get by jurisdiction, is to send it back to apply the right standard of review. They didn't rely on the IJ. There's no reason to defer to the IJ. Why did they not do anything to remand the IJ? And it's also pretty clear that they imposed a burden on him to prove that internal relocation was impossible. No, Your Honor. That isn't clear to me at all. Well, that's the way I read it. What is clear is that they were doing clear error review of the immigration judge's decision. And what did they do? Where did they say that? They did not. They just say they agree with his decision and go off and make their own record. They don't do anything. In the first paragraph of the decision, they say we're reviewing for clear error, and then they go through some of the things that the immigration judge found. But the thing you're missing here is that they were doing clear error review, and they were responding to an issue that was raised by Mr. Maldonado. The immigration judge said, you have not demonstrated that you could not relocate safely to some other part of the country. And what did Mr. Maldonado contend on appeal? He made one argument. That one argument was, but wait, there are federal officers involved. And the immigration judge and the board said, look, you haven't established that because the record doesn't establish that. The record instead says that you have no evidence that federal officers were involved. The DIA said that it was reviewing whether the parties had met the relevant burden of proof under a de novo standard. In the second sentence, the second paragraph. That's what it says. I'm pretty sure that, I thought they said. The first sentence says they're reviewing finding the facts under clear error. Right. The second sentence says they're reviewing whether the parties had met the relevant burden of proof under a de novo standard. Right. There are two questions. First is the question of the factual questions of credibility and internal relocation. The second is the higher level question of the likelihood of torture within Mexico. And that. Did you hear about the burden on relocation? And so doesn't that fall under the second sentence, not the first? No, Your Honor. The actual claim that was made here was that the immigration judge overlooked the fact that federal judicial police were involved. That factual finding. And the board looked at the record and said, but that's exactly not what you said on the stand. What you said on the stand was that you didn't have any evidence that federal judicial police were involved. You were speculating that that was the case because they had access to helicopters. That's a purely factual matter as far as I know. It's a little tough for me to suggest that once finding a petitioner credible, one can then challenge all the facts that the petitioner testified to. No, Your Honor. They believed his facts. They did not. If you read what they did, they, in fact, take him on on everything that he suggested. In my book, it's very sharp that they used an alternative. We don't have to go on that. We'll take the alternative, which was their alternative for me to do. Otherwise, I don't think they gave him the credibility and determination he deserved. But they specifically say his testimony was that he did not know whether there were federal police. And that's in the record. That's page 190. And then I have to look and see what else they said, which, in fact, undermined the credibility and determination of the case. No, Your Honor. You don't contend that he was the – well, the way I read this is he was credible, period. There's not an adverse credibility finding here. No. In fact, if you look, there's a long colloquy from about page 263 to – 250 to about 265 of the record, in which the immigration judge is talking to counsel and saying, well, these are the problems I'm having. What do you have to say about that? And they go back and forth. One of the things that the immigration judge says is, look, I believe what he had to say about what happened to him in Ciudad Hidalgo. He says that. I believe it. So Petitioner has treated that as a credibility finding, and I'm not disputing that the immigration judge believed – looked at that point. But then if you look at pages 263 and 265, counsel actually acknowledges that, look, all he is speculating, he thinks that there is a threat to him in other places. He thinks that some of these people may have moved to other places. He thinks that they may have recognized him. He thinks that they may still have something against him. He thinks that they're going to torture him if they see him and if he runs into them and they recognize him and they get them into his control. The board is simply saying, look, that's just not enough, that you're thinking that that's the case. That's just not evidence. That was the purpose of the cross-examination. It was tested in the cross-examination, and it was determined he didn't have a factual basis for it. And that's to make the burden of proof on him, right? The burden of proof is on him, yes, Your Honor. The overall burden of proof. But they also made it pretty clear that they made it pretty clear, at least the way I read the BIA's decision, that he had to prove that internal relocation was not impossible. That is how they concluded what their analysis. And so we think that's wrong as a matter of law, that he shouldn't have put that burden on him to prove that he couldn't relocate. Your Honor, if you read their analysis, their analysis is, and the immigration judge's analysis, that they were affirming by clear evidence standard. The immigration judge's analysis is, look, your evidence itself proved that you could relocate. We don't even need to look at evidence whether you can't relocate. Your evidence showed that you can. So if we, let's put aside this issue of the application for the facts and just talk about the legal standard. So what do you think we should do about determining what the right legal standard is here? Your Honor, it's the position of the United States that neither the regulation nor anything the board has held at this time has used this sense of absolute impossibility as a burden that the petitioner must bear. Well, what if we think you did, that the board did? What the board did? The board used clear error analysis and the immigration judge did. Let me disagree with you about that. Okay. So should we let the board tell us what the legal rule should be or should we say what the legal rule should be? Or is it already in the briefs, which I think is a third option? The board has not yet spoken on this issue in a precedent decision, and although you can read some of this stuff into other non-precedent decisions, and indeed the immigration judge's decision here, the board hasn't spoken on it. But the board hasn't spoken on the question of impossibility either to that extent. So what the government's position, if I may, is that doing away with the word impossible and replacing it with the word could not or whatever, use the terms from the regulation, that's fine. There's no problem with that. Anything else that this court does at this time would be getting ahead of the board. So if the court feels that it has to address the question of a separate kind of unique standard for internal relocation for torture to resolve this case, which you don't for a variety of reasons that I've already mentioned, if the court feels that it does, then it should remand to the board to address that question in the first instance. And if we do that, do we need to clear out by overruling some of our precedents? No, the only case that the only case that Is there anything we need to do to give the board a free hand to make an independent determination? The only case that would be important in that line along these lines right now is Perez-Ramirez because it's kind of in direct conflict with the other precedents. The board can overrule, so to speak, what this court has done in this area. There's no argument that it's not covered in the statute at all, it's not covered in the convention at all. And frankly, the reg itself is silent about what the word could means. So there is no basis for this court to find And Mesa Verde, that's our 25-year-old precedent, which says an agency can reconsider a question even after the court rules on it. That's correct. Overrule a court of appeals, essentially overrule a court of appeals. So Grant asks us about writing a new regulation. Are you suggesting that the BIA would write a new regulation or are you suggesting that they would issue a three-judge opinion interpreting this regulation? It would have to be a precedent decision of a three-judge panel or a bank decision. Are you talking about our reference at that point, not Chevron reference? No, Your Honor. Isn't Chevron reference when the regulation is interpreting the statute and our reference is when the agency is interpreting the statute? That's correct. You're absolutely right on that point. Our A-U-R. Yes. A-U-E-R. Yes, Your Honor. It's hard to catch the spelling. I'm sorry, yes. I didn't know what U-R meant. Yeah, I didn't double-take her. That's why I think counsel was confused. I was going to say, in cleaning up our case, you didn't mention anything about Limas-Galvan in cleaning up our case law. Well, with respect to the jurisdictional issue. No, no, no. The impossibility. With respect to the impossibility, I think the Board is capable of straightening that out on its own if it wants to. If the Board doesn't believe that there's a role for the term impossibility. What's in our case law suggests that there's an impossibility standard. That's not, that doesn't match up with the regulation. The regulation looks at the totality of the circumstances. Your Honor, that's why the government said in the brief that we didn't, we wouldn't object to you removing the word impossible from that portion of the case law. Okay. Thank you, Your Honor. Thank you. I think you had some time for rebuttal. Yes, Your Honor. I'll be very brief. Just because the facts came up. I know it may not be that important, but it's important that the facts are stated correctly. This man was burned with cigarettes. This man has said, I was burned by cigarettes by undercover agents. This man has said they did not have uniforms on them. This man has said they used helicopters to fly to Mexico City and pick up kidnappees. This man has done everything he could remember to say to the judge that these are federal agents. They don't have helicopters. Now, one missing fact in all of this, unfortunate. On page, on one of the pages, there's a study that talks about federal agents not having uniform in Mexico. And I want to refer you to that page. Plainclothes policemen are the federal police, Your Honors. It's on page 451 of the record. So that is referred in here. This man was correct. Those are federal agents that have done terrible things to him. Now, going back to the judge for a second. You know what the judge said? Early on in the transcript, he says, I can't believe that the cat deferred action is designed to protect people like you who actually kidnap people. Isn't that something? That tells us on the basis of that decision. The judge said, he says, let me read it for you. It is unbelievable. He says, I mean, there is a point where you are going to stop that. I just can't believe that torture convention is meant in this manner to protect you. Against every regulation, against our convention, against the convention, against torture, against our government stand to protect torturee, the judge is telling him, I can't believe it's meant to protect you. So keep in mind the basis of that judge's decision. Keep in mind what the BIA has followed and said on the credibility issue. They speculated that they are not federal agents. Now, imagine. He was found credible. You are out of time. Sorry. Let me ask a question of both counsel because this is somewhat important. If we were to issue an order giving you, let's say, two weeks or some such period to come up with any facts to supplement the record bearing on the question of mootness, and that's the question of mootness that Judge Watford raised. There are a couple of mootness issues here, but I'm talking about the question of whether or not the petitioner is still or back in the United States, alive and back in the United States. I think we know what the record is as it now stands, but if we gave you some limited period of time to come up with anything else, would that be fruitful or would that be pointless? And I'd like to hear from both sides. I don't want you to tell us what you would find, but the question is, would this be a fruitful process? Your Honor, I believe we both have attempted to determine facts in that area. From my side, I have attempted to determine whether the agency has stumbled across Mr. Maldonado's census removal, and they have not. It is my belief that I wouldn't be able to come up with anything additional to that within two weeks. It's a tough question for me because what if the family, what if he's here, Your Honor, and the family just decides not to tell me? Does that make this case moot? I doubt so.  Certainly can try. I mean, we have to deal with the question of mootness. I mean, it's a threshold question. And what I'm asking is, and I can't tell you what this court will decide on the current record, but there's at least some doubt as to whether we will view this case as being alive. What I'm asking the question is, would giving you a limited amount of time, like two weeks, to come up with more facts be fruitful? Or should we simply take the record as it stands, make a decision? The government, I understand, is saying no, it would not be fruitful from its perspective. So I'm asking you. I don't mean to suggest an answer. No, and I respect that. What if the government gives me some assurance? Go ahead and ask for two weeks. You can't ask for it. But your quandary is right. You're worried that he's subject to prosecution for illegal entry. Exactly. What if I tell them, look, the government is not going to touch you. Just tell me the truth. I can't speak. We can't speak on the point. I mean, if you think there's a chance that you might get evidence at this point, then I think I can speak for my colleagues by saying we'll give you the time. But if you think it's pointless, there's no point. Your Honor, given this case is before the in-bank court, I am perfectly willing to say that if Mr. Maldonado is in the United States, he will not be again removed until this court acts. That's what you're assuring, and I thank you. I think you can bank on that now. We have him on the record. We have him on video. And he will not be taken into custody and kept here either. Well... That's a consideration. It really is, and I know it's... Well, I think you could be clever enough to come up with something that could avoid that, right? Think about it. Do you want two weeks or not? I do, Your Honor. I do. Okay. I can't obviously commit the court now, but if we decide in conference that that's what we're going to do, we will issue an order by the end of the day to that effect, okay? Okay. All right. Thank you, counsel. A very helpful argument. Case is submitted. We're adjourned.
judges: KOZINSKI, WARDLAW, GOULD, PAEZ, CLIFTON, SMITH, IKUTA, SMITH, CHRISTEN, WATFORD, FRIEDLAND